FILED & ENTERED

AUG 26 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
| Shellie Melissa Halper | Case No.: 1:09-bk-23807-GM<br>Adv No: 1:19-ap-01021-GM |
| Debtor(s). | **MEMORANDUM OF OPINION RE: ORDER GRANTING MOTION TO DISMISS COMPLAINT WITH PREJUDICE** |
| Shellie Melissa Halper | Date:       August 6, 2019<br>Time:       10:00 AM<br>Courtroom: 303 |
| Plaintiff(s), | |
| v. | |
| Jerome Bennett Friedman, an individual | |
| Defendant(s). | |

In 2009 Shellie Halper filed a bankruptcy case under chapter 11.[1]  This was converted to chapter 7 a few months later.  On April 22, 2011, Soloman Cohen and

---

[1] 1:09-bk-23807

Twin Palms Lending Group each filed a complaint under 11 USC §523.[2]  J. Bennett Friedman of the Friedman Law Group P.C. was the initial attorney representing Twin Palms.

The Twin Palms Adversary complaint asserted the following:  that in 2007 Halper solicited a loan from Twin Palms for $225,000, that she arranged the details of this loan and all subsequent loans, and that she is a licensed real estate and mortgage broker.  It then details two additional loans, each of which Halper executed as an individual and as president of TMCS.  There were a series of defaults and then Halper represented to Twin Palms that she would be entitled to 50% of the settlement proceeds of a lawsuit between Larry Flynt Enterprise and Ron Stover and that this would be sufficient to pay off all three of the loans from Twin Palms.  There was a settlement between Flynt and Stover, but the loans from Twin Palms were not paid off.  The complaint goes on to assert that the original notes were part of a fraudulent scheme of Halper and Stover, where they said that the investments would be to purchase property in Mexico and that the proceeds from the Mexico investment would pay off these notes.  Further, that the third note was promised to be secured by Stover's residence in Oregon, but it was not since Stover did not own a residence.

The Cohen adversary complaint was initially filed pro se.  It stated that Friedman was a trusted friend and advisor to Cohen for over 20 years and that Friedman invested much of his own funds and solicited funds from other investors into the Mexican Investments.  As in Twin Palms there was more than one note.  It contends that Halper asked Cohen for the money and that she arranged all the details of the first loan, which was secured by an office building that she owned.  Halper, through Stover, then asked Cohen for additional money, resulting in a total of 10 loans totaling $2,936,000, none of which has been repaid.  It goes through the details of these loans, some of which were to Halper and some to Paradise in Cortez, LLT ("PIC"), of which Halper was a member.  As in the Twin Palms Adversary, the Cohen Adversary complaint recounts that

---

[2] 1:11-ap-01317 ("Cohen Adversary") and 1:11-ap-01319 ("Twin Palms Adversary") respectively

Friedman told him that the loans would be paid on settlement of the Flynt v. Stover litigation and this was agreed to by Halper. There were later loans and other agreements, but the loans were never paid.[3]

On June 23, 2011, Halper filed a motion to disqualify Friedman as Twin Palm's counsel on the ground that he had previously represented Halper in the issues of the adversary proceeding. It states that Friedman is a partner and investor in Twin Palms and that Friedman ghost-wrote the Cohen adversary proceeding. In 2009 Halper testified in a state court proceeding that Friedman introduced her to various lenders in the Mexico property (including Cohen) and to Ron Stover.[4] She testified that some of the notes to the various lenders were drafted by her and some were drafted by Friedman.[5] The parties stipulated that Friedman was disqualified as Twin Palm's counsel.[6]

Both adversary proceedings were stayed for some period of time due to an alleged pending criminal investigation against Halper. But the stay was lifted and discovery proceeded. When Halper failed to comply with various court orders, she was held in contempt and eventually her answer was stricken in each case.[7] After receipt and review of the evidence, the Court granted judgment to Cohen and to Twin Palms.[8] Halper appealed to the Bankruptcy Appellate Panel, which affirmed. Her appeal to the Ninth Circuit Court of Appeals is pending.[9]

The first four claims for relief in the current adversary proceeding are against Friedman and his law firm. They assert that in filing the declaration of Solomon Cohen in support of the default judgment, Friedman breached his fiduciary duty to the Court and to Halper since it contained knowingly false statements – in that Friedman is the one who brought Stover to Halper and that Friedman is the one who prepared the notes

---

[3] Cohen Adversary, dkt. 1
[4] Twin Palms Adversary, dkt. 8, p. 7, 8
[5] Twin Palms Adversary, dkt. 8, p. 12
[6] Twin Palms Adversary, dkt. 9
[7] Cohen Adversary, dkt. 83, 95, 101, and 109; Twin Palms Adversary, dkt. 84, 94, 107, and 112
[8] Cohen Adversary, dkt. 112, 113, 116, 120, 121; Twin Palms Adversary, dkt. 123, 124, 128, 132, 135
[9] BAP cc 17-1172 and cc 17-1171; Ninth Circuit 18-60019 and 18-60020

and cosigned them.  It also asserts that Friedman violated the California Rules of

Professional Conduct by entering into a business transaction with a client and revealing

privileged information.  Specifically, that Friedman provided Halper with poor legal

advice as to the §523 actions in that he intended Cohen and Twin Palms to prevail; he

represented Twin Palms against Halper even though he had a conflict of interest; he

shared confidential information with Cohen and Twin Palms to the detriment of Halper;

and he ghost-wrote and funded the Cohen and Twin Palms adversary proceedings

against Halper.  In the second claim for relief, Halper asserts that Friedman told her that

he had vetted Stover, that she did not need to appear for her depositions in the Cohen

and Twin Palms adversary proceedings, and that - without consulting with Cohen and

Ferguson - he prepared the Ferguson and Cohen declarations which led to the default

judgment and that those declarations were false.  The third and fourth claims for relief

are based on the same allegations as above.

The fifth and sixth claims for relief are against Cohen and Twin Palms, asserting

that they had knowledge of the wrongful actions by Friedman as to breaching his

fiduciary duty and that they actively participated in that and in defrauding the Court.  The

seventh claim for relief is for declaratory relief against all defendants.

**The Motion to Dismiss**

The Motion to Dismiss is brought on three grounds: statute of limitations,

litigation privilege, and standing.

Statute of Limitations

Halper has known since at least 2010 of her claims against Friedman, since she

listed them in her bankruptcy schedules filed at that time.  She also listed claims against

Stover and thus knew that this was a "bad deal."  In 2011 she filed a motion to disqualify

Friedman as Twin Palms' counsel and at that time she set forth the conflicts of interest

and other allegations raised in this complaint.  These include that he had previously

represented her, that he was a partner and investor in Twin Palms and this violated the Rules of Professional Conduct, that he ghost-wrote the Cohen adversary complaint, that he obtained confidential information from Halper when he represented her and that he should not have been able to use that to the benefit of Cohen and Twin Palms, and that Friedman introduced her to Stover.

All of this was known to Halper some eight years ago and is now barred by both the one-year statute of limitations from the time of discovery of attorney malpractice and the three-year limitation on fraud or the four-year catchall limitation.

Not only was she fully aware of the facts back in 2011, but she was on inquiry notice and she had a responsibility to investigate. *Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1111 (1988).


Litigation Privilege

The litigation privilege is set forth in Calif. Civ. Code. §47:

A privileged publication or broadcast is one made …

(b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows *[ the exceptions do not apply to this case].*

It has been clarified that the communication must be "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990); *Rohde v. Wolf*, 154 Cal. App. 4th 28, 37 (2007).  The publication can be made outside the courtroom even when there is no function of the court or its officers involved or it is made prior to the lawsuit.  *Wilton v. Mountain Wood Homeowners Ass'n*, 18 Cal. App. 4th 565. 569 (1993). The litigation privilege is absolute regardless of whether it was

made with malice or intent to harm. *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002).

Here the litigation privilege specifically bars the allegations concerning the drafting and filing of lawsuits against Halper; the filing of documents in Halper's bankruptcy case and the adversary proceedings; Cohen's and Twin Palms' signing of documents in their respective lawsuits against Halper; Twin Palm's and Cohen's default judgments against Halper; Friedman's alleged statements at a hearing in Halper's bankruptcy; and Twin Palms' and Cohen's alleged representations to the Court in their respective adversary proceedings.

### Halper Lacks Standing

Halper's claims are property of the bankruptcy estate in that she scheduled them and they existed prior to the filing of the bankruptcy case. As to Twin Palms and Cohen, although they were not scheduled, they date back to 2006 and are also property of the estate.

## Opposition to Motion to Dismiss

To prevail on a statute of limitations dismissal, the defendants must show that on the face of the complaint, it is beyond doubt that plaintiff can prove no set of facts establishing equitable exceptions to the rules governing limitations periods. *United States ex. Rel. Air Control Technologies, Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013); *Jablon v. Dean Witter Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Because the application of a limitation period often depends on matters outside the pleading, statutes of limitations defenses are not generally resolved on Rule 12(b)(6) motions. *Supermail Cargo Inc. v. United States*, 68 F.3d 1204, 1206-1207 (9th Cir. 1995). There is no statute of limitations period as to fraud on the court and a judgment may be vacated at any time on this ground. *Ehrenberg v. Roussos (In re Roussos)*, 541 B.R. 721, 724 (C.D.Cal. 2015). There is also no statute of limitations for a declaratory

relief claim.

Conduct that rises to fraud on the court is intentional or willful, harms the integrity of the judicial process, relates to a central issue in the case, and has influenced the court's decision or affected the outcome of the litigation. In short, it was Friedman and not Halper who handled this whole investment scheme and Halper never received the money. The parties were aware of this, but nevertheless proceeded in the adversary actions.

As to the other claims, each filing of a document triggered a separate statute of limitations. And the discovery rule also extends the statute of limitations. And there is a continuing violation since each small harm may not be actionable by itself. Here Friedman engaged in continuous acts of fraud up until July 2018 and there is a three-year statute of limitations.

As to the litigation privilege, some of these claims are not in tort, such as fraud on the court. Also, the statements were made by Friedman, who fraudulently used Cohen and Ferguson as straw people to accomplish their plan to engage in fraud on the court. Thus, since Friedman was neither a litigant nor a participant authorized by law, the litigation privilege does not apply. Because the defendants were aware that the claims were frivolous, they lacked a good faith belief in any legally viable claim.

As to standing to sue, these claims did not exist before the bankruptcy case was filed and thus did not become part of the property of the estate. If they are property of the estate, the court must grant Halper leave to amend to name the Trustee.

**Reply**

Halper ignores that the complaint mirrors the motion to disqualify Friedman, which was filed in 2011.

Courts regularly dismiss complaints based on the statute of limitations.

The claim of fraud on the court is an attempt to get a second bite of the apple because her motion for relief under FRCP 60(b) was denied on 8/7/18 and is currently

on appeal.

A claim under FRCP 60(d)(3) does have a time restriction.  It cannot be brought several years after the fact when the party seeking the relief knew of the supporting facts at the time of the judgment or order. *Pyramid Technology Corp. v. Nicoles, Inc.*, 9 Fed. Appx. 786 (9th Cir. 2001) (delays in bringing an action for fraud on the court is nearly as threatening to the integrity of the judicial process as the fraud itself.)

Several of the cases cited by Halper actually limit the time for bringing a "fraud on the court" complaint under FRP 60(d)(3) – the "fraud" must not be known as of the time of the entry of the judgment and it couldn't be discovered despite diligent inquiry within one year.

An action for the alleged disclosure of confidential client information is not continuous, but only arises once.  *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288 (9th Cir. 1969).  The substance of the attorney-client communication is not a property right; it is the relationship that is protected.  Once the fabric of the relationship is broken, it cannot be repaired and so no further claim for relief arises due to ongoing breaches.  Halper is also barred by laches, waiver, and estoppel because she waited 8 years to do anything about the alleged breach.

As to litigation privilege, the contents of the Twin Palms and Cohen filings in their §523 cases go to the heart of Halper's claims in this adversary proceeding.  Friedman is an owner of Twin Palms and thus an authorized participant in the Twin Palms adversary proceeding.  Further, there is no requirement that the litigation have merit for the litigation privilege to apply. *La Jolla Group II v. Bruce,* 211 Cal. App. 4th 461, 476 (2012).

As to standing, Halper knew since 2010 that she had entered into a bad deal with Stover and listed her claims against him in her bankruptcy schedules.  Therefore, any claim that Halper had against Friedman or his firm as to what he did or did not do concerning Stover is property of the estate.  And the same applies as to any claim against Friedman concerning the investment project.

////

1    ////

2

3    **ANALYSIS AND RULING**

4

5    "When ruling on a motion to dismiss, we may 'generally consider only allegations

6    contained in the pleadings, exhibits attached to the complaint, and matters

7    properly subject to judicial notice.' " [citation omitted] (quoting *Swartz v. KPMG*

8    *LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). We accept factual allegations in the

9    complaint as true and construe the pleadings in the light most favorable to the

10    nonmoving party. [citation omitted]. We need not accept as true conclusory

11    allegations that are contradicted by documents referred to in the complaint.

12    *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003)

13    (internal citation omitted).

14    *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1030-1031 (9th Cir. 2008)

15

16    When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers

17    evidence outside the pleadings, it must normally convert the 12(b)(6) motion into

18    a Rule 56 motion for summary judgment, and it must give the nonmoving party

19    an opportunity to respond. See Fed. R. Civ. P. 12(b); *Parrino v. FHP, Inc*., 146

20    F.3d 699, 706 n.4 (9th Cir. 1998). A court may, however, consider certain

21    materials -- documents attached to the complaint, documents incorporated by

22    reference in the complaint, or matters of judicial notice -- without converting the

23    motion to dismiss into a motion for summary judgment. [Citations omitted.]

24    *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003)

25

26    As to the Friedman objection to the request for judicial notice of the Halper

27    declaration of August 6, 2018, the Court agrees that the content of the declaration

28    cannot be accepted as true.  The content does not directly reflect on the issue of statute

of limitations, etc.  Therefore the objection is sustained.

Claims One through Five

Claims one through five all deal with matters which have a set statute of limitations, with the latest possible triggering date for at least some of them being that of discovery.  The longest time limit would be four years.

Although this complaint never mentions the Motion to Disqualify Friedman, the Court can take judicial notice of it.  Ms. Halper, under penalty of perjury, set forth facts known to her at the time as to the relationship of Friedman to herself, the various investments, Cohen, Twin Palms, etc.[10]  Thus there is no factual question that -  as of June 2011 - Halper knew all of the allegations of conflict and breach of professional conduct which are contained in the current complaint.

As to the theory of continuous breach, the Court finds that this does not apply in the case before it.  It is the confidential relationship between Halper and Friedman that was allegedly destroyed.  This occurred only once, although it is asserted that Friedman used pieces of information on an ongoing basis.  However, this is an unclear area of the law.  But even if there was a differentiation of each separate act, in this case the complaint is barred by estoppel and waiver.  Once Halper knew of the first substantive breach and particularly that there would be subsequent breaches, she was required to act.  That all occurred as early as 2011 and continued throughout the case[11]  The delay in dealing with this was unwarranted and damaging.  The Twin Palms adversary has close to 200 docket entries and the Cohen adversary is similar.  Many hours and a great deal of money have been spent on these cases.  This is grounds for estoppel as to this late assertion against Friedman and the others.

Also, there is no continuous time limit for breach of the attorney-client privilege.  Once the breach took place, the attorney-client privilege is broken and there is nothing

---

[10] Twin Palms adversary, dkt. 8.

[11] See complaint ¶21 for a list of about 38 docket numbers, which chronicles papers filed from the initial complaint in April 2011 into 2012, 2013, etc.

left to shatter.  Here the alleged initial breach was in 2011.  It was known by Halper in 2012.  That was the time that the clock started to run.

Because of that, the questions of litigation privilege and standing are not relevant.  However, a brief note that to the extent that Friedman acted wrongly within the adversaries, or leading up to the adversaries, he was certainly protected by the litigation privilege.  He was a co-owner or investor in Twin Palms.  At one time he was the attorney for that entity.  While the litigation privilege may not cover every allegation against Friedman, it certainly relates to much of the content of this complaint.

Finally, all of this arose pre-petition or is the continuation of pre-petition actions and thus it is property of the Estate.  The Trustee was not named and, given the ruling on the statute of limitations, there is no reason to now grant Halper the right to amend to name him.

Claim Six

The issue of "fraud on the court" is more complex.  If brought under FRCP 60(b)(3), there is a one-year limitation beginning when the judgment is entered.  Although this is not a motion, the complaint seeks to relieve Halper from the final judgments and thus FRCP 60(b)(3) does apply.  But the alleged fraud took place when the Cohen and Ferguson declarations were filed and certainly no later than May 30, 2017 when the default judgments were entered – based largely on those declarations.  This complaint was filed on March 18, 2019 and therefore FRCP 60(b)(3) is unavailable.

Halper thus relies on  FRCP 60(d)(3), which is specifically applicable to set aside a judgment for fraud on the court.  Halper cites several cases for the theory that there is no time limit for filing a complaint or motion under Rule 60(d)(3), but they do not support this adversary proceeding.  Thus, for example, the Seventh Circuit in *In re Golf 225*, 652 F.3d 806, 809 [incorrectly cited as being in 625 F.3d] states:

> The problem of definition arises from the fact that a motion to set aside a
> judgment on the ground of fraud on the court has no deadline. It must therefore

be defined narrowly lest it "become an open sesame to collateral attacks, unlimited as to the time within which they can be made by virtue of the express provision in Rule 60(b) [now 60(d)] on this matter, on civil judgments." *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1985); see also *Drobny v. Commissioner*, supra, 113 F.3d at 678. The question is, how narrowly? To answer this question we need to consider what kind of fraud ought to be a ground for setting aside a judgment perhaps many years after it was entered. The answer is the kind of fraud that ordinarily couldn't be discovered, despite diligent inquiry, within a year, and in some cases within many years—cases in which there are no grounds for suspicion and the fraud comes to light serendipitously. Examples are bribery of a judge or exertion of other undue influence on him, jury tampering, and fraudulent submissions by a lawyer for one of the parties in a judicial proceeding, such as tendering documents he knows to be forged or testimony he knows to be perjured [Citations omitted].

Similarly, the case of *Pyramid Technology Corp. v. Nicoles, Inc.*, 9 Fed.Appx 786, 787 (9th Cir. 2001) holds that delaying until after trial (and in that case as in the current one after an appeal) is fatal to raising a challenge of fraud on the court:

The existence of broad inherent powers to vacate judgments is not a license for parties to refrain from bringing motions until after an appeal on the merits. By doing so in the present case, Nicoles has extended the life of this litigation for more than two years after the United States Supreme Court denied certiorari. The court's broad inherent powers to vacate its own judgment for fraud on the court reflect the threat fraud poses to the integrity of judicial process. But the dilatory actions taken by Nicoles are nearly as threatening.

The fraud alleged in this complaint does not fall into the category described in *Golf*. Halper knew of the complained-of actions for some eight years, but waited almost two years after judgment (and even a year after her loss on the first round of appeal) to

affirmatively raise them as a fraud on the court.

One cannot merely sit on these matters and - some years later - raise them as a sword against the allegedly erring attorney.  This does not mean that they could not be used as a shield in the Twin Palms and Cohen adversaries.  And should the Ninth Circuit reverse the default and let these matters proceed to be litigated, Halper has her right to put forth her theories of defense such as Friedman's involvement, her innocence and reliance on him, etc.  But she cannot proceed against him for affirmative relief. That ship sailed years ago.

While FRCP 60(d)(3) has no stated time limit, the courts have uniformly required that the filing be within a reasonable time.  Although the facts stated in the Cohen and Ferguson declarations can be seen as a continuance of the asserted "fraud on the court" that began with the complaints themselves, they can also be seen (as argued by Plaintiff) as a separate set of acts that began the time running only when they were filed on April 13, 2017.[12]

If seen as a continuance for fraudulent allegations in the complaints, eight years is not reasonable.  Matters in the adversaries against Halper were heard by the Court on a periodic basis during that time.  Halper appeared through counsel and later alone. She was an active participant, if only to try (quite successfully) to delay the cases moving forward to discovery.  Prior to entry of default she never raised the issue that Friedman had defrauded the court.

But looking at the 2017 declarations as separate acts that could be classified as "fraud on the court," this complaint was still not brought within a reasonable time.  The complaint was filed almost two years after the declarations were filed.  During that period of time, default judgment was entered in each case (based on the content of those declarations) and Halper filed her appeal and actively participated in prosecuting the appeal in the BAP.  Only after the BAP affirmed the default judgments did she move this court to vacate the default judgments and for an indicative ruling – solely on the

---

[12] Cohen adversary, dkt. 113; Twin Palms adversary, dkt. 124

issue of her failure to pay the required sanctions, never mentioning the claim of fraud on the court.[13]  However, after the tentative ruling on the motion for an indicative ruling had been made available, she filed a supplemental declaration asserting the incorrect statements in the Ferguson declaration – alleging the same "facts" as are contained in this adversary complaint.[14]

And even the motion for an indicative ruling was filed almost a year before this adversary complaint was filed.[15]  Halper articulated her "fraud on the court" facts in her supplemental declaration filed on August 6, 2018, but still waited months to bring this adversary complaint.

Reasonableness is not solely measured in days or years.  It can also be measured in the actions that took place during the passage of time.  Here Halper's delay in bringing this adversary complaint as to "fraud on the court" pursuant to FRCP 60(d)(3) was not reasonable.

### Claim Seven

Claim seven for declaratory judgment carries the same statute of limitations as the legal or equitable claim on which it is based. *Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943; *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155.  Since claims one through six are all barred by the statute of limitations, so is claim seven.

The Motion to Dismiss with granted with prejudice.

###
Date: August 26, 2019

_____
Geraldine Mund
United States Bankruptcy Judge

---

[13] Cohen adversary, dkt. 155; Twin Palms adversary, dkt. 173; Halper's appealed to the BAP as to the denial of her motion for an indicative ruling – the BAP affirmed the Court's ruling and no further appeal was taken.  BAP CC-18-1225;  BAP CC-18-1126.

[14] Cohen adversary, dkt. 168.  This was not filed in the Twin Palms adversary.  The Court did not consider it since it was a response providing new information after Halper had access to the tentative ruling.

[15] Cohen adversary, dkt. 153, 155; Twin Palms adversary 171, 173